EZRA PEPPER, Appellee *v.* JOHN STONE, Appellant.

ORANGE,
*February,*
1838.

When the court of probate remove a guardian, it is proper to state the grounds on which the court proceeded.

Letters of guardianship create a trust, coupled with an interest, and when one of two guardians dies, or is removed, the trust survives or remains to the other.

THIS was an appeal from a decree of the court of probate for the district of Randolph.

On the 3d day of March, 1836, John Stone, the appellant, was appointed by said probate court, guardian of the minor children of Daniel Peaslee, deceased, and gave bonds according to law. On the 6th of April, 1836, at the request of the friends of said minor children, Josiah White was, by said court, appointed a joint guardian with said Stone, of said children, upon which the said Stone and White gave joint bonds, for the faithful performance of their duty, as such guardians, and a joint letter of guardianship issued to them from said probate court.

On the 1st May, 1837, Ezra Pepper, the appellee, as grandfather of the said minor children, represented to said probate court, that the joint guardians were improperly managing

the property of their wards, and prayed the court to remove them from their guardianship, and appoint some other person or persons in their stead, and the 17th day of the same May was assigned by said court for a hearing in the premises.

On the said 17th day of May, 1837, Josiah White resigned his trust, as one of the joint guardians of said minor children; whereupon said John Stone claimed, before said probate court, the right of sole guardianship. But that court revoked the joint letter of guardianship, and decreed that the trust, under said letter, cease, on the ground that the resignation of said White did, of itself, operate as a removal of said Stone, by a dissolution of the joint guardianship. No hearing was had by said court upon the complaint of the appellee.

From this decree of the probate court Stone appealed to this court.

*L. B. Peck*, for appellant.

1. The guardianship of Stone remained after the resignation of White. The trust reposed in the guardian is coupled with an interset, and a removal can only be made for cause. *Eyre* v. *the Countess of Shaftsbury*, 2 Pr. Wms. 103, 7, 121; *The people* v. *Byron*, 3 Johns. cases, 53.

2. The court below not having acted on the complaint so far as to inquire into the truth of the charge of improper management, on the part of Stone, this court ought not to make any inquiry into the matter, but should reverse the decree. *Prescott* v. *Tarbell*, 1 Mass. R. 204, 7. If the court hold otherwise, they will send the matter to the county court for trial. *Shumway* v. *Shumway*, 2 Vt. R. 339.

3. The complaint of Pepper, on which this proceeding is founded, contains no definite or particular charge against the appellant. Stone cannot be deprived of his appointment, without having the offence, with which he is charged, fully and plainly, substantially and formally described to him. Without such charge, he is unable to know what to defend against. *Murdock's* case, 7 Pick. 303, 330.

*W. Upham*, for appellee.

The resignation and discharge of White, one of the joint guardians, carried out White, the other, as a matter of course. *Curle's* case, 11 Co. 2, 6.

The appointment was joint, and a joint bond was given for the faithful discharge of their joint duties.

The moment White was discharged from his trust, the bond became inoperative. The sureties could not be made liable for the sole acts of Stone, after White's powers had ceased.

During the continuance of the joint guardianship, one of the guardians could not have disposed of the property belonging to the wards, without the consent and concurrence of the other. The trust was personal, and confided to the two jointly, and not to one alone. When two are appointed joint executors, or administrators, we admit, as a general rule, that, on the death or resignation of one, the power survives to the other. But a guardianship bears no analogy to an executorship, or administratorship. Guardians take custody of their wards, and superintend their education and morals, as well as manage their property. Executors and administrators have nothing to do with the children of those whom they represent. Their duty is confined to the management of property, and nothing else. But even in the case of joint executors, a mere naked power to sell land must be executed by all the persons named, and if one of these dies, it does not survive. *Franklin* v. *Osgood*, 14 Johns. 527. *Bull* v. *Bull*, 3 Day's Ca. 384.

In this case, the probate court declined conferring the trust upon eitheir White or Stone, alone, but conferred it on both, jointly. It seems, then, to follow as a necessary consequence, that the death or resignation of one would determine the power of the other. After the joint letter of guardianship was revoked, had the minor heirs of Daniel Peaslee any guardian ? If they had, who was it, White or Stone ? We say neither. The children were without a guardian. It was then proper for the probate court to appoint one. See probate court act, § 34, 35, 36, 37.

When two or more persons are appointed executors or administrators, and one of them die or decline, the power, by statute, survives to the other, but it is not so with joint guardians. Probate act, § 36 and 37.

2. The record shows that Stone was the sole guardian to the minor heirs of D. Peaslee, at the time the joint appointment was made. He consented, however, to act as joint

guardian with White, and joined with him in a bond for the faithful discharge of their joint duties, as such guardians.

This determined his power, as sole guardian, and the revocation of the joint letter of guardianship did not have the effect to revive his former power, as sole guardian. *Walker* v. *Walker*, 2 Wash. 195. American Ch. Dig. p. 220.

3. If the resignation of White, and its acceptance by the court, did not determine the trust, as to Stone, this court must go into an examination of the evidence, and see whether or not he was properly removed from the trust by the probate court.

The opinion of the Court was delivered by

WILLIAMS, C. J.—John Stone the petitionee, and Josiah White, were appointed joint guardians of the minor children of Daniel Peaslee. An application was made to have the guardians removed, and one of them, viz. White, tendered his resignation. The other guardian, Stone, claimed to be appointed sole guardian, or that the guardianship belonged to him. The judge of probate removed the guardians, on the ground that the resignation of White was a dissolution of the joint guardianship, and, of itself, operated as a removal of Stone, and, thereupon, proceeded to appoint another guardian. It was proper for the judge to state the ground of his proceeding, especially if it was upon a construction of the statute, or upon the decision of any legal question. If the removal was not because there were objections to the guardians, or the manner of executing their trust, then the court of probate has never exercised its discretion on the subject. If that court meant to decide upon the law, it decided incorrectly. The judge of probate did not proceed in this case, because the guardians had abused their trust, but because he considered that the resignation of one guardian, operated as a removal of the other.

In this view, he was manifestly wrong. Letters of guardianship create a trust, coupled with an interest. When two are appointed, and one of them dies, the trust survives. It is so when administration is granted to two. The law is the same as to joint guardians and joint administrators. *Eyre* v. *Countess of Shaftsbury*, 2 Pr. Williams, 102. *People* v. *Byron*, 3 Johns. cases, 52, 2 Dane, 40.

The bonds which are required, and given by guardians and administrators, are subject to this known principle of the law. The sureties enter into the obligation with a knowledge of their liability, for the acts of both, or either, or the survivor. There is nothing in the probate act which either contravenes or repeals this principle of the common law. The court of probate, may in some cases, put an end to the powers of both or either, in cases where the powers would not otherwise cease,—but when the authority of one ceases or is extinguished, that of the other remains.

The court of probate, in the case before us, evidently proceeded upon mistaken grounds, and but for that mistake of this principle of law, we have no reason to believe they would have discharged the guardians and appointed others. It will not be necssary for us to examine witnesses to determine whether the guardians have properly, or improperly exercised their trust, as it does not belong to this court either to grant letters of guardianship or administration, or to take bonds.

The decree of the court of probate must be reversed, as that court evidently mistook the law, in discharging or removing the guardians, and the guardians will remain, until the court of probate determine that they are unsuitable or incapable.

The decree, appointing another gnardian, will of course be reversed, and this judgment is to be certified to the probate court.